UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JANIS SABETTA : | |
| : | Civil Action No. 04-0298 (GMS) |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| BETHANY MARINA, INC. : | |
| and ALFRED V. MELSON, JR. : | |
| Defendants. : | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**I.   STATEMENT OF RELEVANT FACTS**

In their brief in opposition to the instant motion, the Defendants have correctly stated the conditions they agreed to perform in the Settlement Agreement. They agreed to: (1) pay $35,000 to Plaintiff; (2) convey marketable title to Plaintiff for a replacement boat slip; (3) consent to the release of approximately $2,000 to Plaintiff that had been held in escrow and (4) make suitable repairs to the exterior of Plaintiff's property including the deck, entranceway and paved access. Conditions 1, 2 and 3 have been satisfied and are not at issue in this motion. However, despite the fact that the Settlement Agreement was signed in December 2005, the fourth condition, the repairs to the exterior of the house, has yet to be satisfied. In fact, the work that was done in this regard has to be removed because the Defendants failed to obtain the necessary approvals.

   A.   Clarification of the Events Prior to the Filing of this Motion

While it is true that the Defendants submitted a plan for the remedial work on January 5, 2006, the plan was essentially useless because it did not contain any dimensions or specifications. When the plan was submitted to the undersigned, the Defendants requested

Plaintiff's comments before the engineer sealed it. (Exhibit "2" to Defendants' Opposition Brief). The next day, the undersigned presented the Defendants with a list of questions pertaining to the drawing and suggesting a meeting between the parties to resolve the issues. The questions included whether the proposed parking space was included in the fire lane and whether the County had approved the plane. The latter question was of particular concern because the original destruction of Ms. Sabetta's property was purportedly done by the Defendants because the house did not conform to the applicable setback regulations. Moreover, as the Defendants acknowledge in their brief, they specifically agreed to submit all necessary documents to ensure that the proposed remedial work complied with all applicable codes. Settlement Agreement, ¶4(d), Exhibit "1" to Defendants' Brief.

The Defendants admit that they did not revise the plans until June 7, 2006, six months after the original drawings. The Defendants have not offered any explanation for this five-month delay. In reality, the revised drawings came about only because the undersigned wrote to Magistrate Judge Thynge on May 30, 2006 and requested the Court's assistance with enforcement of the settlement. (Exhibit "3" to Defendants' Brief). The Defendants have only acted when faced with the threat of Court intervention.

On June 13, 2006, the undersigned sent additional questions to counsel for the Defendants regarding the revised plans including the length of the proposed flowerbed and whether the defendants were obtaining the necessary government approvals before the work was done. See, Exhibit "A" hereto. The defendants did not respond to a number of Plaintiff's questions so additional questions were sent on July 31, 2006. (Exhibit "5" to Defendants' Brief). Plaintiff reiterated her concern about the plans being in compliance with the applicable

2

governmental regulations.  She also raised a concern whether the proposed flower bed/ retaining wall would prevent her from opening her car door.

Although the Defendants claim that they answered Plaintiff's "two remaining questions", they never provided answers to the questions contained in the July 31, 2006 e-mail.  Because the matter was dragging on without any good faith effort by the Defendants to comply with the Settlement Agreement, the undersigned sent a letter on August 29, 2006 approving the drawings so that the work could begin.  (Exhibit "7" to Defendants' Brief).  However, as stated in the letter, the approval was given so that the plans could be submitted to the County for approval.  Ms. Sabetta's approval was also conditioned on the following:

(a)  confirmation of the width of the driveway and assurance that the width is not less than that of the driveway before it was removed;

(b)  confirmation that the proposed planter will not obstruct her use of the driveway including her access to her vehicle when parked in the driveway;

(c)  final approval by the Sussex County Planning and Zoning Department for approval and any other regulatory agencies or bodies

(d)  regular updates are to be provided to me informing me as soon as the plans are submitted to the County, approved by the County, etc.

(e)  compliance with the applicable terms of the Settlement Agreement

Nothing contained in the August 29, 2006 letter altered the terms of the Settlement Agreement but it did emphasize the importance of the Defendants obtaining the necessary approvals.

Pursuant to Paragraph 4 of the Settlement Agreement, the Defendants had 75 days to complete the work from the date the plans were accepted by Ms. Sabetta.  When the deadline for

3

the Defendants' completion of the repairs passed on November 14, 2006 without any work being done, Plaintiff filed the motion to enforce the settlement agreement.

      B.      <u>The Events Since the Motion Was Filed.</u>

On several occasions before and after the motion was filed, the Defendants represented to the undersigned that Sussex County's position was that the plans did not have to be approved. However, the Defendants also represented that the County would not put this in writing. See, Exhibit "B" hereto. Plaintiff did not want to face a situation where work was performed at her house that did not comply with the applicable regulations and approvals procedures. Therefore, on December 12, 2006, a letter was sent to the Defendants informing them that no work was to proceed unless Plaintiff "received written confirmation from Sussex County that: (1) the plans do not violate any applicable ordinances or regulations or (2) the plans do not require county approval." Exhibit "C" hereto.

Notwithstanding this letter, the Defendants proceeded with the remedial work, which proved to be counterproductive. First, a contractor hired by the Defendants disconnected Ms. Sabetta's heat pump to redirect a line. They did so in December knowing that no one was home at the time and knowing that they could not turn the heat on without getting access to the inside of the house. Defendants also knew that Ms. Sabetta often traveled abroad and was gone for long periods of time. When Ms. Sabetta returned to her property after the New Year, weeks after the work was done, she found a house with no heat. Fortunately, the weather had been mild and there was no damage to the house.

Secondly, Ms. Sabetta realized that the retaining wall that had been installed by the Defendants' contractor prevented her from opening her car door. The Court will recall that this very issue was raised by Ms. Sabetta in her questions submitted in response to the revised plan.

4

On January 10, 2007, the undersigned provided photographs taken by Ms. Sabetta to the Defendants and (1) reiterated the need for the County approvals and (2) directed the Defendants to remove the retaining wall. See, E-mail correspondence and photographs attached hereto as Exhibit "D1" through "D9".

Thirdly, Ms. Sabetta received an e-mail on January 19, 2007 from the Council for the homeowners' association informing her that the retaining wall was built in the common area. This e-mail was passed on to the Defendants. See, Exhibit "E" hereto. The Defendants represented that they would contact the homeowners association about the issue but no information has been provided on this issue as of the date of this writing.

Finally, and perhaps most importantly, Ms. Sabetta received a letter on April 12, 2007 from the Sussex County Planning and Zoning Commission informing her that the work done by the Defendants had not been approved by either the homeowners association or the County. See, Exhibit "F" hereto. Contrary to the Defendants' repeated representations, the County explicitly stated in the letter that final approval of the work was required from the county commission. The Defendants never obtained the required approvals prior to performing the work despite Ms. Sabetta's repeated requests and demands for them to do so.

The Settlement Agreement provides that Ms. Sabetta is entitled to be reimbursed for her costs associated with enforcing the agreement. Since the Settlement Agreement was signed, she has incurred attorney's fees of approximately $2,500.00 associated with enforcing the settlement (which does not include the cost of any subsequent correspondence, hearings or other attorney involvement). The invoices will be produced if requested by the Court. She has also expended her time and incurred costs, including the cost of a hotel room due to the lack of heat in her home caused by the Defendants. Ms. Sabetta has also been unable to lease and/or sell the property

because the Defendants did not perform the exterior repairs and she has delayed employment opportunities so that she can be available to inspect and approve or reject the exterior repairs when they are finally performed. She has also lost the proper use of her home for the past 17 months since the settlement was reached and will incur additional costs to bring her house into compliance.

Counsel for the parties recently participated in a phone conference to discuss how this matter is going to be resolved. The Defendants were placed on notice of the attorney's fees incurred by Ms. Sabetta. The Defendants agreed to address the issues with the homeowners association and the county, which includes removing the existing retaining wall and redesigning the front of the house if the current remedial work is not in compliance with the applicable codes and regulations. No further work has been done to Ms. Sabetta's house since the conference.

## II.    QUESTION PRESENTED

Whether Plaintiff Janis Sabetta is entitled to have the terms of the Settlement Agreement enforced and (1) have the repairs to her property performed immediately and (2) receive compensation for the Defendants' breach of the Settlement Agreement.

## III.   LEGAL ARGUMENT

Plaintiff reiterates its position that the Defendants have repeatedly breached the terms of the Settlement Agreement both before and after the instant motion was filed. In fact, the Defendants' breaches after the motion was filed appear all the more egregious.

It is undisputed that the Settlement Agreement requires the Defendants to repair the deck, entranceway, drive way and parking area of Ms. Sabetta's house. Seventeen months after the agreement was reached, they still have not done so. The drive way has not been paved. No additional parking space has been provided. The stairs have not been properly fixed. The

retaining wall they built encroaches into the common area, violates the setback ordinance and prevents Ms. Sabetta from parking her car in her own driveway.

The Defendants repeatedly ignored Ms. Sabetta's concerns about obtaining all necessary approvals before doing any work despite agreeing to do in the Settlement Agreement. They have misrepresented to Ms. Sabetta that no approvals were necessary when the letters from the homeowners association and the County state the complete opposite. Now, the work that was done will have to be removed, redesigned and reinstalled.

The Defendants do not offer any legal or factual justification for their abject failure to comply with the Settlement Agreement. They allege that Ms. Sabetta is somehow responsible for what has transpired because "she did not give final approval". That position is incorrect because she did give approval to the Defendants but rightfully conditioned it on them obtaining the necessary approvals so that everyone, including the Court, could avoid the position we now find ourselves in. In doing so, she did no more than emphasize a provision that was already contained in the Settlement Agreement. She has done nothing to breach the parties' settlement while the Defendants have repeatedly breached their obligations to her.

It bears repeating that a settlement agreement is a contract that is binding and enforceable upon the parties to the agreement. Woppert v. Windsortech, Inc., Del. Ch., 865 A.2d 1282, 1258 (2004). Therefore, if a party breaches the agreement, the non-breaching party is entitled to appropriate relief including specific performance of the terms of the settlement agreement and appropriate damages. Id., 865 A.2d at 1290.

Since the Settlement Agreement was signed in December 2005, Ms. Sabetta has incurred damages directly caused by the Defendants' breach of the Settlement Agreement. In addition to the repairs that have not been performed, she has incurred the costs outlined above that are

7

associated with compelling the Defendants to comply with the terms of the Settlement Agreement. Consequently, Ms. Sabetta is entitled to have the repairs made to her house immediately and to be compensated for her damages that were caused by the Defendants' unjustified breach of the Settlement Agreement.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff, Janis Sabetta, respectfully requests this honorable Court to enter an Order: (1) compelling the Defendants Bethany Marina, Inc. and Alfred V. Melson to comply with the terms of the Settlement Agreement including immediately repairing her property and (2) scheduling a hearing to determine the amount of damages recoverable by Plaintiff for the Defendants' breach of the Settlement Agreement.

/s/ Robert D. Ardizzi
Robert D. Ardizzi, Esquire
Davis, Bucco & Ardizzi
901 N. Market Street
Wilmington, DE 19801
(302) 345-9808
Attorney for Plaintiff

Date: May 10, 2007